```
 1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                          :
 4    HOTELSAB GREEN, LLC,                :
                                          : 17-CV-08776 (JGK)
 5                   Plaintiff,           :
                                          :
 6              v.                        : November 16, 2018
                                          :
 7    REIGNWOOD EUROPE HOLDINGS SARL,     : 500 Pearl Street
                                          : New York, New York
 8                   Defendant.           :
      ------------------------------------X
 9
          TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
10              BEFORE THE HONORABLE DEBRA C. FREEMAN
                   UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:       JONATHAN DANIEL LUPKIN, ESQ.
13    (Telephonically)         LAURA DEXTER, ESQ.
                               MICHAEL SMITH, ESQ.
14                             Lupkin PLLC
                               80 Broad Street, Suite 1301
15                             New York, New York 10004

16
      For the Defendant:       MATTHEW S. KLEPPER, ESQ.
17    (Telephonically)         ERIC MICHAEL ROBERTS, ESQ.
                               CHRISTOPHER M. STRONGOSKY, ESQ.
18                             DLA Piper (US) LLP (Chicago)
                               444 W. Lake Street, Suite 900
19                             Chicago, Illinois 60606

20

21    Court Transcriber:       MARY GRECO
                               TypeWrite Word Processing Service
22                             211 N. Milton Road
                               Saratoga Springs, New York 12866
23

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

1          THE COURT:  Hi, it's Judge Freeman.  Sorry to keep

2  you.

3          MR. LUPKIN:  Good afternoon, Your Honor.  This is

4  Jonathan Lupkin.  I'm with my colleagues Laura Dexter and

5  Michael Smith on behalf of the plaintiff.

6          THE COURT:  That's HotelsAB, right?

7          MR. LUPKIN:  Yes, HotelsAB.  That's correct.  And

8  also the third-party defendant, Andre Balazs.

9          THE COURT:  Okay.

10          MR. KLEPPER:  Good afternoon, Your Honor.  This is

11  Matt Klepper.  I'm her for Reignwood Europe, the defendants

12  and counter plaintiffs and party plaintiff, and I've got with

13  me my colleagues Chris Strongosky and Eric Roberts.

14          THE COURT:  I didn't catch the names of the

15  colleagues.  Can I just get that again?

16          MR. KLEPPER:  Sure.  Chris Strongosky and Eric

17  Roberts.

18          THE COURT:  Okay.  And your name again?  Let me make

19  sure I've got it right.  Your name again was?

20          MR. KLEPPER:  Matt Klepper.

21          THE COURT:  All right.  So I have some

22  correspondence here and I thought maybe it made more sense to

23  get you on and hear what you had to say.  I have this letter

24  dated November 5 raising -- I'm sorry, November 1 and a

25  response from November 5.  So what did I do with one of these

1    letters?  Hold on one second.  I know I had two.  I know I

2    read two.  One of them seems to have been placed aside and I'm

3    -- hang on one second because I just want to see if my deputy

4    has one sitting on her desk.  One second.  Okay.  I've got

5    everything.  I'm sorry.

6              So I think maybe I should just throw it open and

7    talk to me and tell me if you've made any progress since you

8    wrote to me and tell me whether I have an issue that needs my

9    attention or it's really not such an issue.

10             MR. LUPKIN:  Yes, Your Honor.  Again, good

11   afternoon, this is Jonathan Lupkin speaking.  As of yesterday

12   HotelsAB and Mr. Balazs have substantially completed their

13   entire document production.  We're done.  As we sit here now

14   though, other than the production of Goodwin Proctor documents

15   that Reignwood has made we received no documents whatsoever

16   from them.  And so to answer your question directly, the issue

17   I believe is very much alive and unless we set some interim

18   deadlines here for when document production is going to be

19   completed, I fear that it's not going to get done in a timely

20   manner that will satisfy at least the spirit of Judge Koeltl's

21   directive that the case move with some alacrity.

22             THE COURT:  Well here's what I don't quite

23   understand and I guess I'll turn to the other side.  You say

24   that Reignwood is working very hard to make document

25   production and yet I've got a party on the other side saying

4

1   that they're getting nothing.  So they may be working very

2   hard behind the scenes but what seems evident to your

3   adversary is not a whole lot of documents in hand.  So what do

4   we do about that?

5           MR. KLEPPER:  This is Matt Klepper.  Yes.  For

6   Reignwood Europe.  So first of all, we have produced about

7   17,000 pages to plaintiff.  Those were documents that we

8   collected from Goodwin Proctor.  They were the law firm that

9   represented Reignwood Europe in the transaction or border

10  transaction that's the basis for the dispute.  There's, you

11  know, a fair amount of work to review those documents and

12  produce them at the earliest, actually more because of the

13  extension nature of the privilege issues.  We produced those.

14  We will I believe today be producing something on the order of

15  1,500 to 2,000 documents to Mr. Lupkin, at least 8,500 pages.

16  Those are materials that have been gathered in Europe and will

17  be produced today.  We have been working extremely hard.  As I

18  think we noted in our joint status report, Your Honor, it must

19  have been a couple of weeks ago for both parties, we have

20  custodians all around the world collecting the data.  It's a

21  little bit of time because of language and alphabet

22  [inaudible].  Many of the documents are in Chinese and the

23  custodians or the IT people involved don't speak Chinese.  We

24  also have to deal with data privacy rules or laws in all of

25  the countries we're dealing with because they set up

5

1  restrictions on the ability to move data across the

2  international border or in this case the [inaudible].  So we

3  have worked through those.  We're dealing with materials that

4  we have collected.  We did -- one of the issues raised in the

5  correspondence between [inaudible] early November was the

6  question of search terms.  We worked hard to come up with a

7  list of search terms.  We sent them to Mr. Lupkin on the 5th.

8  We got a couple of rounds of back and forth.  I think we're

9  settled on those.  I haven't gotten confirmation on that from

10 Mr. Lupkin but we've been doing all the things that we can do

11 to get this case ready to move to the deposition stage.

12         I think in the schedule of presentations or the

13 suggestions that were made by the parties to Your Honor in the

14 joint status report Mr. Lupkin had suggested he would be

15 prepared to complete the document production by the 9th of

16 November.  I just heard today that they completed it so that's

17 good to hear.  We simply have a lot more custodians around the

18 world with more complicated issues.

19         Having said all that, I still think we are on track

20 to substantially complete our document production by the end

21 of the month, the first week of December as suggested in our

22 joint status report.  So we are working hard and gotten a

23 bunch of documents.  We will get more I believe today and then

24 follow on productions from there.

25         THE COURT:  Response?  Reaction?

6

1          MR. LUPKIN:  My only reaction --

2          THE COURT:  By the way, would I be -- can I assume

3    that you had this conversation with each other before this

4    very moment where whatever was just said was said to

5    plaintiff's counsel?

6          MR. LUPKIN:  Other than what was contained in the

7    submission, Your Honor, that you referred to, the answer is

8    no.

9          THE COURT:  Okay.  So first and foremost you have to

10   really communicate well with each other, please.  So in light

11   of what you just heard though, do you take some comfort from

12   that that you're going to be getting some documents and that

13   there's a proposed plan for getting them or a proposed

14   timeframe for getting the rest done?

15         MR. LUPKIN:  I mean it sounds -- you know, the devil

16   is in the details.  If we can get a commitment from them to

17   complete their document production by the end of the first

18   week of December or get an order to that effect, we'd be

19   perfectly satisfied with that.

20         THE COURT:  Counsel, how comfortable are you that

21   you can get this done by that time?

22         MR. KLEPPER:  I think an order indicating that all

23   parties are to -- I think Mr. Lupkin said this earlier, would

24   I be comfortable with substantially completing the document

25   production by whatever the end of the first full week of

7

1  December is is something that we can live with.  [Inaudible]

2  problem which at this point I don't anticipate, but if we do,

3  I'll first talk to Mr. Lupkin and then if necessary raise it

4  with the Court.  But I think that schedule and that type of

5  order is something that is aggressive but manageable.

6          THE COURT:  Substantial production of documents by

7  all parties by December -- what was the date you were

8  suggesting?

9          MR. LUPKIN:  I was adjusting December 7th.

10          MR. KLEPPER:  Pearl Harbor Day seems appropriate,

11  Judge.

12          THE COURT:  By December 7th.  Okay.  Substantial

13  production of documents by all parties by December 7th.

14          Now, after having said that and I'll put that in the

15  text order, is there anything else you need from me?

16          MR. LUPKIN:  Yes, Your Honor.  One of the issues,

17  one of the overarching issues that I think both parties agree

18  exist is that the schedule, even with the substantial

19  completion of the documents, will not permit compliance with

20  Judge Koeltl's originally scheduled scheduling order which

21  called for the completion of all discovery, fact and expert,

22  by December 21st.  The parties have in their joint submission

23  of 10/23 have alternative views about it but we all agree that

24  the schedule needs to be changed.  And given where we are at

25  this juncture in the case and the fact that we now have

1   assurances that the documents are going to be substantially

2   completed in terms of production by December 7, we are

3   agreeable in principle to the schedule proposed by Mr. Klepper

4   and Reignwood, that is the completion of fact discovery by

5   March 29; initial experts for parties, on experts to where the

6   parties bear the burden of proof April 19th; rebuttal reports

7   by May 17th; and expert depositions to be completed by May 31

8   with a footnote.  The footnote is this schedule in my view is

9   possible and doable.  In the event -- if we can obtain

10  cooperation from Reignwood to secure the voluntary testimony

11  of the three witnesses we identified in our joint submission,

12  that is the chairman of Reignwood Group, his daughter, and the

13  principle negotiator who remains still at Reignwood.  The

14  joint submission that was made described three people who are

15  clearly within Reignwood's control certainly for the purposes

16  of producing them at deposition.  A question was raised as to

17  where these witnesses would be deposed.  We have no objection

18  to taking their deposition either in Hong Kong or in London.

19  When we discussed this issue prior to making the submission,

20  Mr. Klepper indicated that he would recommend to his client

21  that these witnesses be made available but subject -- in Hong

22  Kong or in London subject to the limitations of the Hague

23  Convention.  And I asked him to explain what types of

24  limitations he had in mind given the fact that this would in

25  essence be a voluntary production of witnesses or a compelled

9

1   production pursuant to a party obligation.  And I was not able

2   to get a satisfactory response.  These are the key -- these

3   witnesses are all central to the case.  We've not identified

4   29 people from Reignwood.  We've identified three.  And we

5   would ask that they be directed to produce those three

6   witnesses as part of their party discovery.

7           MR. KLEPPER:  Judge, this is Mr. Klepper.  I'm happy

8   to --

9           THE COURT:  Yes.  Let me just say this.  Your joint

10  status report that was dated October 23 -- I'm just double

11  checking this.  But on the docket the joint submission

12  separate and apart from any exhibits was 49 pages and in its

13  entirety was 164 pages.  That included exhibits.  Which is

14  rather a lot for a, you know, here's our view as to a joint

15  proposed schedule.  I understand do you wanted to lay things

16  out for me.  I think it even had a table of contents.  Rather

17  much, rather elaborate.  Maybe that's what Judge Koeltl would

18  have been looking for.  But it seemed like it was a lot.  And

19  I didn't print all of that out and I don't think I ever got a

20  courtesy copy, although I could be wrong about that.

21          MR. LUPKIN:  We did submit one, Your Honor.

22          THE COURT:  Well it didn't make its way to

23  [inaudible] somehow or other.  So again, I'm having some paper

24  issues.  But I do have it on the docket in any event.  And if

25  -- you may still have a couple of disputes that maybe I can

1  resolve right now about depositions or the Hague Convention or

2  whatever.  But if you are able to agree on a proposed schedule

3  and you think it is sensible, can you please just submit to me

4  a proposed order modifying the prior schedule telling me that

5  you are in agreement.  If I think it's reasonable, I will so

6  order it and you will have a schedule.

7          MR. LUPKIN:  Your Honor, we're happy to do that.  I

8  think with the footnote that I just carved out about these

9  three witnesses --

10          THE COURT:  Yes, let's talk about that.

11          MR. LUPKIN:  Yes.

12          THE COURT:  Let's talk about that so that we can

13  sort of wrap it all up and we'll have a scheduling order that

14  covers everything you need to cover.  So let me hear what the

15  issue is there.

16          MR. LUPKIN:  Your Honor, this is Jonathan Lupkin on

17  behalf of HotelsAB and Mr. Balazs.  Your Honor, in terms of

18  the party discovery here, we identified based on the initial

19  disclosures as well as our own analysis and understanding of

20  the case the three witnesses that are still in the employ of

21  Reignwood, still in the employ of Reignwood Group that are

22  both critical to the case and that we believe should be

23  produced for depositions.  Those three are the chairman of

24  Reignwood Group.  I'll get back to him in a moment.  His

25  daughter who goes by the American slang name Please [Ph.] and

1    an employee, a high level employee at Reignwood by the name of

2    Fiona Zu.  The chairman of Reignwood Group is a critical

3    player in this case for any number of reasons.  The first is

4    that as part of this transaction the joint venture that

5    ultimately wound up not coming to fruition required a liquor

6    license from the New York State Liquor Authority and it was

7    understood from the very beginning that the chairman who runs

8    the entire Reignwood Group will be providing those

9    fingerprints.  There were extreme difficulties in getting

10   those fingerprints.  We ultimately received something that was

11   entirely deficient for the purposes of the New York State

12   liquor licensing authorities.  I'm not even certain that

13   they're his fingerprints.  But it was sufficiently troublesome

14   so that we needed to restructure the deal so that he, the

15   chairman, no longer had to provide fingerprints.  Apparently

16   he had some issue that he's concerned about in terms of

17   divulging fingerprints to authorities.  So we attempted to

18   work around that.  We put his daughter Please in charge of the

19   corporate structure.  When I say we, I mean the joint venture.

20   Her fingerprints were provided but by that time it was too

21   late and the deal had already fallen apart.  So the chairman,

22   it's significant on that critical issue in the case because

23   one of the claims of breaches, one of the key claims of

24   breaches is that Reignwood was required to cooperate in the

25   procurement of this liquor license one aspect of which was

1  securing the chairman's fingerprints.  And because he

2  assiduously refused to provide those fingerprints, we claim

3  that that has a causal relationship, a direct causal

4  relationship to the deal falling apart.

5          In addition, and I know that you say you don't have

6  the joint submission in front of you, Exhibit 3 to that is an

7  organizational chart of what the joint venture would have

8  looked like had it gone to fruition.  And at the very top of

9  that organizational chart on behalf of Reignwood is the

10 chairman.  And so he is an indispensable -- he was the guy

11 calling all of the shots.  His daughter Please, as I've just

12 indicated, was a decision maker as well as the person who was

13 put in to be the nominal owner of the entity when the chairman

14 was unprepared to provide his fingerprints.  She was at the

15 mediation, the failed mediation that we had in front of Judge

16 Maas at Jams.  She was the principle lead negotiator on behalf

17 of that team.  And so she is important.  And Fiona Zu is a

18 senior executive at the Reignwood Group and other than an

19 individual by the name of Sung [Ph.] Wan [Ph.] Yee [Ph.] who

20 was the principle negotiator on behalf of Reignwood who no

21 longer works for Reignwood and who's now in litigation with

22 them, she was likely the most knowledgeable senior executive

23 other than the chairman and his daughter Please regarding this

24 transaction.  We're not looking to be overly broad and we're

25 certainly not insisting that any of these witnesses be

1  required to come to New York to testify.  But what we are

2  asking is that they be made available.

3          Now, I would note that with respect to the chairman

4  and Please they both reside as I understand it in Beijing.  It

5  is not possible to get even through the Hague Convention

6  testimony from witnesses in China, mainland China, even

7  through the Hague Convention.  So absent some direction that

8  these witnesses be produced, these witnesses will not be

9  available for us to examine.  And from our vantage point, I

10 think Fiona Zu is in London but she should not be required to

11 have to be going through the rigors of the Hague Convention

12 either.  And from our vantage point, it seems to me that we

13 have two options here.  Either these witnesses be provided in

14 either Hong Kong or London, whatever is most convenient for

15 the witness, or we don't take their depositions and they be

16 precluded from testifying at trial.

17         THE COURT:  The one who is not in China --

18         MR. LUPKIN:  Is Fiona --

19         THE COURT:  -- why [inaudible] from going through

20 international [inaudible]?

21         MR. LUPKIN:  Because she is a quote/unquote managing

22 agent within the meaning of Rule 30 for the purposes of

23 requiring a party to produce them.  She was acting on behalf

24 of Reignwood Europe which was the counterparty to the letter

25 agreement and she was the one calling all of the shots.  Well,

14

1    she was the one directing the day-to-day activities of the

2    transaction along with Mr. Nee [Ph.] who nobody has control

3    over, and the lawyers at Goodwin Proctor.

4              THE COURT:  All right.  And the reaction to this is

5    what?

6              MR. KLEPPER:  So Judge, this is Matt Klepper for

7    Reignwood Europe.

8              Let me start [inaudible] Mr. Lupkin [inaudible].

9    Let me suggest a way forward first.  I had -- as Mr. Lupkin

10   knows, I have offered in the past what I viewed as a

11   compromise solution on the issue.  I literally spoke with my

12   direct client representative in-house counsel shortly before

13   this call and got authority to make a different compromise

14   along the lines of something that Mr. Lupkin earlier

15   suggested.  This issue was raised and addressed in the joint

16   status report.  The question as to whether someone is a

17   managing agent under Rule 30 is very fact specific.  The

18   burden is certainly on the party requesting the deposition.  I

19   don't think any of these people are.  I mean there's no even

20   allegation that these are officers.  The question is whether

21   they're managing agents.

22             What I would suggest, Judge, just to try to get some

23   momentum is to set some period of time for me to have the

24   conversation with Mr. Lupkin about a compromise.  I'm happy to

25   talk to him this afternoon.  But you know, a week or two and

1  if we haven't resolved it that's the deadline for also to file

2  a motion with you as to whatever issues in the joint status

3  report haven't been resolved.  In other words, keep the joint

4  status report as a pre-motion letter.  And if we can't work it

5  out in whatever deadline Your Honor and Mr. Lupkin wants, we

6  will say look, on that date if it hasn't been worked out and a

7  party wants to pursue it, they need to file a motion.  We can

8  have a very short briefing schedule and, you know, appear

9  before Your Honor in person or however Your Honor would like

10 to resolve it.  But you know, on this question, you know, it

11 is complicated.  It requires some [inaudible].  And I

12 certainly disagree with Mr. Lupkin's history in that regard.

13 But you know, even the joint status report sets out several

14 pages from each side on these specific points and frankly,

15 before a full record could be produced that would allow Your

16 Honor to make an informed decision if we can't agree on

17 something.  I think it requires more attention because these

18 are very core issues as to whether these folks are managing

19 agents or not.

20        THE COURT:  So this lengthy submission that has

21 several pages, there would still be a need if you can't agree

22 for many more pages?

23        MR. KLEPPER:  Well, I guess what I was thinking is

24 it's simply just officially presenting the issues to Your

25 Honor or if what Your Honor would prefer -- well, I do think a

16

1    formal motion might make sense --

2              THE COURT:  Well, is there something --

3              MR. KLEPPER:  -- [inaudible].

4              THE COURT:  Maybe you can work it out but if you

5    can't, how much is there that you want to say that is not

6    already said in the joint submission in terms of like roughly

7    the number of additional pages you might want to take up with

8    additional briefing?

9              MR. KLEPPER:  I think on this point -- on other

10   points it might be our motion, but on this point it would be

11   Mr. Lupkin's motion.  I'd need to see a motion.  But I would

12   not imagine that our response would be more than five to seven

13   pages.

14             THE COURT:  Five to seven pages --

15             MR. KLEPPER:  [Inaudible] --

16             THE COURT:  If you assume that I read what you

17   already wrote, five to seven pages in addition to that?

18             MR. KLEPPER:  It would include the points that have

19   been made there.  I guess the total argument that you could

20   read without having reference to joint status reports to get a

21   sense of our position would be in that page range.

22             THE COURT:  Why require lawyers to rewrite something

23   they've already written?  I mean --

24             MR. LUPKIN:  Your Honor, may I interrupt for second?

25             THE COURT:  Yes, but let me --

1          MR. LUPKIN:  This is Jonathan --

2          THE COURT:  First of all, what is the proposed

3    compromise?  Maybe you can just agree on it.

4          MR. KLEPPER:  It revolves -- well, at a high level,

5    Your Honor, it revolves at least with respect to one of the

6    witnesses assuming we can reach an agreement about no

7    deposition and no trial testimony along the lines of what Mr.

8    Lupkin I think referenced earlier in this call.  But there are

9    some bells and whistles to that as to the ability of either

10   party to sort of move forward to the absence of evidence from

11   that party.  So we need to talk to Mr. Lupkin to see if we

12   could agree to a stipulation that is agreeable to both sides

13   to try to at least get one of the witnesses off the table.

14         MR. LUPKIN:  Your Honor, this is Jonathan Lupkin

15   speaking.  This is becoming unduly complicated in my view.

16   There are three witnesses.  They're the only three witnesses

17   at Reignwood who are still there who have the most knowledge

18   about the case.  And the fact that there's a stack of

19   corporations on top of Reignwood Europe who signed the letter

20   agreement is really beside the point.  And it's a very simple

21   question that we've called and has been on the table for at

22   least a month if not more.  So it seems to me that there's a

23   decision that has to be made without briefing about managing

24   agents.  I mean it's just -- this is a giant waste of time in

25   our view.

18

1          MR. KLEPPER:  Judge, let me [inaudible].  Let me

2     just respond to that.  That argument is precisely the

3     [inaudible].  We need to get a decision but I think we need

4     some sort of formality to Mr. Lupkin's motion.  What he just

5     said is these witnesses, they know a lot, they're the most

6     knowledgeable.  That isn't the standard under Rule 30 as, you

7     know, everyone on this call is aware.  Rule 30 has a very

8     specific standard.  The burden is on Mr. Lupkin.  If he wants

9     to stand on his submission and the joint submission and say

10    that should be treated effectively as his motion, we're happy

11    to stand on [inaudible].  I think it makes some sense to give

12    us some time to try to work it out.  And if not, and Your

13    Honor would prefer to just leave that as the basis, that's

14    fine.  I thought that specific discrete motions might actually

15    facilitate sort of the [inaudible] but we're happy to stand on

16    the joint status report if you think that is a more efficient

17    way to move forward.  But the notion that because these people

18    know a lot allegedly, that they're managing agents, it's just

19    not what the rule says.

20          MR. LUPKIN:  It's not a matter of them knowing a

21    lot.  They do know a lot.  But they also were decision makers

22    in this process.  The chairman --

23          MR. KLEPPER:  That is not --

24          MR. LUPKIN:  -- was at the very top of the chain.

25          THE COURT:  Wait, wait, wait, wait, wait, wait.  So

1  the party that wants to get these depositions, do you have

2  anything -- if I were to look at the managing agent question,

3  do you have anything that you would want to add to what you

4  have already written in your joint submission if I were to

5  read and consider what's written as opposed to just hearing

6  orally from you now or --

7         MR. LUPKIN:  Yes, that we actually provided Mr.

8  Klepper with additional documents that we uncovered during our

9  now complete document production that speak directly to this

10 issue.  They are not before the Court.  Some of them have been

11 designated as confidential I believe by Reignwood or would be

12 designated as confidential.  I'm happy to make that submission

13 to Your Honor in addition to whatever else we've submitted.

14 But these are documents that demonstrate clearly the integral

15 role that all of these witnesses had in connection with this

16 deal.  And the fact that they happen to be operating under the

17 banners of different corporations is entirely irrelevant for

18 these purposes.  So yes, the answer to your question is there

19 is an additional submission of material that was produced to

20 the other side and made available to the other side and

21 identified to the other side in advance of this call.  But I

22 think that if the Court is going to analyze this managing

23 agent question, it would be appropriate for the Court to

24 consider that material as well.

25         THE COURT:  Okay.  Are you an agreement that in

1   order for me to resolve the question of whether these people

2   should be compelled to appear for deposition I have to

3   determine the essentially factual question of whether they

4   satisfy the definition of managing agent under the law?

5           MR. LUPKIN:  I believe that that's correct, Your

6   Honor.

7           THE COURT:  Okay.  So --

8           MR. KLEPPER:  It is correct from Reignwood Europe's

9   perspective, yes.

10          THE COURT:  It is correct.  Okay.  And that is the

11  only thing that I need to determine?  If I determine that they

12  are managing agents or if I determine that they are not

13  managing agents, each and every, that will decide where you go

14  from here?

15          MR. LUPKIN:  It seems to me, Your Honor, that is

16  really two questions.  If the answer is they are managing

17  agents and should be made available somewhere for deposition,

18  then that's the answer to the question.  If the answer is that

19  they're not managing agents, it seems to me that they should

20  be precluded from appearing at trial.

21          THE COURT:  You don't have --

22          MR. LUPKIN:  Because if there's sufficient --

23          THE COURT:  If they are not managing agents, do you

24  have any other grounds for trying to compel testimony?  One of

25  them is not in Beijing so one of them presumably you could

1   still seek through the Hague Convention or --

2        MR. LUPKIN:  Right.  So Fiona Zu, I believe that

3   she's in London and Mr. Klepper can correct me.  But as to the

4   others, I don't believe -- I cannot think on the phone of any

5   other way to compel their testimony.  They would essentially

6   be made unavailable to us.

7        THE COURT:  Okay.  And one, you would be able to try

8   to obtain testimony from through the Hague Convention or some

9   international channel, and the other because of Beijing, if

10  they don't honor that, you would simply do without that

11  testimony and the only issue left would be potential

12  preclusion.

13       MR. LUPKIN:  That's correct.

14       THE COURT:  All right.  And let me ask another

15  question.  If this case -- forget summary judgment motions,

16  any summary judgment motions for a second but just think about

17  potential trial, if this case were to go to trial and if

18  someone were to show up to testify at trial who had not been

19  deposed, it's been known to happen that just in advance of

20  trial people have sat for deposition while they're in the

21  United States.  Now, I realize that would be late in the game

22  and, you know, really not give you a lot of opportunity to

23  figure out what to do with that testimony, but such things

24  have been known to happen when you have people who live very

25  far away and don't usually travel but do travel for the

22

1   purpose of trial.  Is that a possibility for any of these

2   people that you assume are not going to show but if by any

3   chance they do the other side gives advance notice and you

4   work together to try to get them to show up a little bit ahead

5   of time and you depose them then?

6          MR. LUPKIN:  The answer to your question, this is

7   Johnson Lupkin speaking again, the answer to your question is

8   that would be, you know, sub-optimal but it happens in state

9   court in New York County all the time.  So it's not something

10  that we've not had to deal with before.  But what I am

11  concerned about is the issue that you said putting aside for

12  the moment, the summary judgment motions, I can't properly

13  respond to a summary judgment motion with affidavits from any

14  one of these three individuals --

15         THE COURT:  Sure.

16         MR. LUPKIN:  -- without having had the opportunity

17  to depose them.

18         THE COURT:  Okay.  So what if we look at it this

19  way?  Number one, I don't want you to spend your client's

20  money rewriting something that's already written.  You know,

21  you have this nice table of contents.  I can go through the

22  submission, I can see if I can find the courtesy copy.  If

23  not, I can print the relevant portions.  And I can look at the

24  question of managing agent.  You can supplement that on both

25  sides.  Mr. Lupkin, you can send these documents with a short

23

letter explaining what they are and why they add to the mix.

I can get an opposition submission.  If you feel there wasn't

enough stated in the letter you can oppose.  You can do it by

way of a motion that simply incorporates what you've written

before rather than write it again if it's no more cost to your

client because you have it, you know, in a word processing

system and you can just spit it out again and you think it

would be easier to have it all in one place.  I'm looking for

the most efficient and cost-effective way to make sure I have

everything I should be looking at to try to answer the

question.  I can leave it to you to figure out if you want to

just say Judge, we direct you to Page such and such and such

and such and in addition please look at these documents and

we'll consider that a motion.  Or I'm just going to write it

up again as a motion and put it in one place and --

          MR. LUPKIN:  Your Honor, do you contemplate formal

motion practice?

          THE COURT:  That's what I'm saying.  I mean I don't

care if it's a letter motion.  I don't need something that

looks like a notice of motion and an affidavit and brief.  I

don't care.  I just want the issue teed up in some way.  And

if you're going to put documents in front of me, they should

be appropriately authenticated in some manner so I know what

I'm looking at.  But you may not dispute that the documents

are authentic and appropriate to be looked at and you can just

1  tell me that too.  I mean whatever is most efficient to make

2  sure that I have in front of me everything that everybody

3  wants to say on a topic.  I don't care whether it's a formal

4  motion, an informal motion, a letter supplementing what you've

5  already written saying Judge, on this issue please just look

6  at what we've written plus this.  I don't care.  All right?

7  Formality is not the issue.  The getting it teed up in a cost-

8  effective way is the way you should go.  So you get -- okay.

9            MR. KLEPPER:  Judge, this is Matt Klepper for

10  Reignwood.  I understand and I think what we should do is Mr.

11  Lupkin and I will have a conversation --

12            THE COURT:  Yes.

13            MR. KLEPPER:  -- on a way forward and a schedule on

14  this.

15            THE COURT:  Yes.

16            MR. KLEPPER:  [Inaudible] in the proposed order we

17  send you with the overall schedule.

18            THE COURT:  Right.  So number one, you get that teed

19  up so that you have those issues.  Number two, before you

20  submit anything further, you do have some conversations in

21  case you can work out a deal or even in part work out a deal.

22  And if I have less to address, I have less to address and that

23  makes me happy.  So if you have a potential deal with respect

24  to one of them, for example, where you say look, we agree we

25  will not put in affidavits and summary judgment and we will

1   not put this person in for trial, as a witness in trial, you

2   know, provided you agree that you're not going to refer to X

3   or Y and you say, you know, I can agree with that, that's

4   fine, or you say or we agree that if we don't anticipate this

5   person coming to trial but if something changes last minute,

6   we will make this person available with as much notice as

7   humanly possible and at least X number of days, you know, and

8   you say okay, I can live with that rather than having to

9   travel to Beijing or something, you know, we'll get the person

10  in New York shortly before trial.  You know what, it's not a

11  horrible solution for that one particular person.  So confer

12  about it, all of it, before you make supplemental submissions.

13  Work that out as part of your negotiating schedule and how

14  you're going to do things and see if you can work things out.

15  And you know, I'm also perfectly comfortable ordering that if

16  someone's deposition is resisted and then they show up on the

17  scene with an affidavit on behalf of the clients or, you know,

18  with testimony at trial, that's not fair.  And so you need to

19  have a mechanism of some sort whether it is preclusion or

20  making them available or something so that you don't have that

21  unfairness.  And that should be part of your talks and

22  understand that if you can't work it out, that's likely to be

23  part of the resolution by me.  Okay?  You need to have some

24  fundamental fairness here that if the very same party that

25  says no they weren't the person in charge and then comes in

1  with an affidavit saying I was the person in charge, you can't

2  talk out of two sides of your mouth.  Okay?

3          MR. LUPKIN:  Right.  Your Honor, the only thing I

4  would ask in this, I have two follow-up requests.  I think

5  that makes eminent sense.  The only thing I would ask is that

6  the Court impose some sort of deadlines for this because

7  otherwise given the history of this case I suspect it's going

8  to drag on ad infinitum.

9          THE COURT:  Well, I've already asked you to put your

10 heads together about a proposed joint modification of the

11 scheduling order.  What I suggest is you put your heads

12 together about this as well and include something that on this

13 issue it will either be resolved or fully briefed by a certain

14 date.

15         MR. LUPKIN:  Yep.

16         THE COURT:  Okay?

17         MR. LUPKIN:  That sounds fine.  And the only other

18 question that I had is the question of mechanics.  To the

19 extent that the material has been designated as confidential,

20 we want to make sure that we comply with the Lugosh [Ph.]

21 case from the Second Circuit.  And I wanted to get a sense

22 from you, Your Honor, as to how you would like us to proceed

23 in terms of making the application to seal.

24         THE COURT:  Yes, the Lugosh case.  So first of all,

25 what's filed on a public docket should be as much as is

1   possible.  So if you have an exhibit that is partially

2   confidential, you know, the papers should be submitted, the

3   exhibits should be submitted and redacted so that the

4   confidential information is not on the public docket.  The

5   references in your papers to the confidential portion can be

6   redacted.  But you should redact sparingly only for what is

7   actually confidential.  I don't want the entire submission

8   under seal.

9          Second, with respect to what is under seal, is there

10  agreement as to what is confidential and that it's

11  appropriately so?

12         MR. LUPKIN:  For these purposes, Your Honor, at this

13  juncture I think that there are enough moving parts here that

14  I don't want to add complexity by insisting upon litigation as

15  to whether it's an appropriate designation or not an

16  appropriate designation.

17         THE COURT:  The only caveat.  I don't mind approving

18  a proposed order that portions of things be placed under seal

19  and that redacted versions be placed on the record.  But if in

20  making a ruling I or Judge Koeltl rely on the information

21  that's submitted and it becomes a judicial document that

22  someone needs to be able to reasonably understand in order to

23  understand the opinion, you do have this risk that it's going

24  to lose the confidentiality protection.  Who is it who wants

25  the confidentiality protection?  Is it a third party or is it

28

1  a party --

2          MR. LUPKIN:  I believe --

3          MR. KLEPPER:  No, Judge.  With respect to the -- I

4  think what Mr. Lupkin is referring to, he sent us [inaudible]

5  exhibits on Wednesday evening that he believes bears on the

6  managing agent issue.  We disagree but we'll set that forth in

7  our submissions.  We responded yesterday to note that there

8  are, you know, confidential information about bank account

9  balances and the like in there and asked that a couple of

10  documents be deemed as confidential.  So we're the ones

11  requesting.  And these are documents produced by plaintiff,

12  HotelAB, [inaudible].  And when Mr. Lupkin's firm indicated

13  that they might need them, we just went back and we said look,

14  these need to be treated as confidential.

15          THE COURT:  Well, if it's a bank account balance you

16  can redact the bank account.

17          MR. KLEPPER:  It's a matter of --

18          THE COURT:  You've got to redact the bank account

19  number anyway.  If it's an issue of the balance and that's

20  somehow sensitive financial information, you can redact the

21  number unless the number is somehow important to the managing

22  agent issue.

23          MR. KLEPPER:  Right.

24          THE COURT:  It seems unlikely.

25          MR. LUPKIN:  The only other thing I would raise here

1    is if we are going to be making a formal motion there is one

2    category of documents that we would require that we asked for

3    as part of our Rule 34 request that we have not received.  And

4    specifically, those are org charts with respect to the

5    defendant in this case.  We as we sit here now do not know --

6              THE COURT:  Wait, wait, wait, wait, wait.  In order

7    to make the managing agent argument you need documents you

8    haven't seen yet?

9              MR. LUPKIN:  There is one class of -- I feel that we

10   can make the managing agent argument based on what we have but

11   I believe that the argument will be substantially bolstered to

12   the extent that we had organizational charts for the Reignwood

13   organization including the officers and directors of the

14   defendant in this case.

15             THE COURT:  Does such a chart exist?

16             MR. KLEPPER:  Judge, I don't -- this is Matt Klepper

17   for Reignwood Europe.  I'm not sure about the timeframe of the

18   requested chart.  I can't say for sure whether it does or not.

19   But I don't think, and I'll defer to my partner Mr. Strongosky

20   on this, I don't think this was even raised in the joint

21   status report.  Mr. Strongosky, am I right or wrong about

22   that?

23             MR. LUPKIN:  It was not raised in the joint

24   submission.  I felt that there was far too much already in the

25   joint submission.

1          THE COURT:  Wait, wait, wait, wait, wait.  If I

2     understand correctly, you've got this argument that they're

3     managing agents.  You think if you just got an organizational

4     chart it would help bear out what you believe.  And so if

5     there is one, you'd like to get your hands on it because you

6     think it's going to help you amplify the very point you're

7     making and you'd like to be able to put it before the Court.

8     So if it's been duly requested and if there is one, have a

9     good faith conference about that.  Maybe there isn't one.  If

10    there is one and if it goes to who had what role and what

11    company, you know, it might have some relevance.  It may be it

12    doesn't bolster the argument once it's seen.  But I don't have

13    a problem with suggesting you talk about seeing this through

14    and try to get it produced before the papers come in.

15         MR. KLEPPER:  Judge, this is Matt Klepper again for

16    Reignwood Europe.  We had objected to various requests

17    including this one.  We had a prior meet and confer and then

18    the --

19         THE COURT:  And was it raised as an outstanding

20    issue?

21         MR. KLEPPER:  Right.  The joint status report was

22    intended, based on your instructions during our last

23    conference, to have the parties put all outstanding discovery

24    issues on the table and that was not raised.  Frankly, I

25    actually crossed it off my list.  So if Mr. Lupkin wants to

1   have another discussion, obviously I'm happy to do that.  But

2   that's the status of that issue.  It is not [inaudible] --

3           THE COURT:  The notion -- if you're going to make --

4           MR. KLEPPER:  -- [inaudible].

5           THE COURT:  If you're going to write a 150 or so

6   page report when I've said give me everything that's in issue

7   so I can have it all in one place and then you say afterwards

8   there's just one thing, it's important, that's a little odd.

9   So factor it into your conversation.

10          MR. SMITH:  Your Honor --

11          THE COURT:  You seem to think you don't really need

12  it because you're so confident that they're managing agents.

13          MR. SMITH:  Your Honor, this is Michael Smith for

14  the plaintiffs and the counterclaim defendant and third-party

15  defendant.  I just for the record want to clarify we did in

16  fact raise this issue not as a separate Rule 34 issue but in

17  connection with this very question of whether or not these

18  individuals can be compelled to appear for deposition.  And

19  it's on Page 14, 17 if we use the header that's placed there

20  electronically on the joint submission where we alerted the

21  Court of the very fact that Reignwood's argument that we

22  require -- that we have insufficient evidence to support our

23  claim is a difficult one to swallow given that they had

24  refused to tell us even whether these individuals are

25  employees, officers, or directors of the defendant which is

1   certainly something they could easily tell us and which would
2   moot the managing agent question.
3        MR. KLEPPER:  Judge, this is Mr. Klepper.  So
4   there's a sentence in here where they say they note
5   Reignwood's continuing refusal to produce organizational
6   charts in the context of the managing agent argument.
7   However, in the very long submission that you have referenced
8   where they raise other issues with our Rule 34 responses they
9   don't raise that.  It could be --
10        THE COURT:  All right.  You know what?  It sounds
11   like a single document maybe.  Maybe it's not.  Maybe it's a
12   collection of organizational charts.  Maybe they don't even
13   exist.  Not everybody has them.  I don't know what your good
14   faith conference was about that at whatever point in time.
15        MR. STRONGOSKY:  Your Honor, this is Chris
16   Strongosky.  I'm counsel to Reignwood also.  Just on this
17   point we -- the request that was asked for sought
18   organizational charts that included by definition all of the
19   named defendants, parents, subsidiaries, affiliates, outside
20   agents.  And so there was many other issues with respect to
21   that request.  I just want to make that point.  There wasn't
22   any interrogatories that were served by the plaintiff that
23   asked for identity of these people [inaudible] that would've
24   been a fair request if they had served one.  They did not do
25   that.  And --

1          THE COURT:  Can I just say this --

2          MR. STRONGOSKY:  -- there hasn't been a 30(b)(6)

3    deposition or anything that was standard for discovering this

4    kind of information.

5          THE COURT:  All right.  But look, let's get

6    pragmatic here.  You want me to try to figure out what I think

7    as to whether somebody is a managing agent or is not.  There

8    may be evidence that helps elucidate that under the standards,

9    case law standards or statutory standards for what a managing

10   agent is.  If there are some documents that might speak to it

11   that are relatively straightforward but don't go off in all

12   directions more broadly than would be needed to speak to that

13   question, talk to each other because it's a -- you know,

14   trying to get that right, trying to answer that question

15   correctly.  And if there's some evidence that speaks directly

16   to it rather than squabble about it, presumably if I believe

17   that that evidence would favor a side because you think you're

18   right, so you might as well see if you can find it and produce

19   it.  It's not a big deal.  And you know, it would help me get

20   the answer, the correct answer.  So put it in your list of

21   things to talk about, you know, things that have to do with

22   who these people are, and maybe you can informally provide

23   some information if you don't already have it and already

24   know.  It seems to me you probably already know things.  But

25   who these people are, what their roles were, you know, what

34

1    their functions were with respect to these entities, what a

2    managing agent is and does and how it does or does not fit

3    into that, into those parameters all relevant factors being

4    taken into account.  So we're going to summarize.  Okay?

5    Here's your mission.  Number one, you talk about anything and

6    everything that requires good faith conference between counsel

7    including possible solutions to the dispute about the

8    depositions with possible different scenarios like what if on

9    a summary judgment motion, what if at trial, what if this?

10   See if you can work out some kind of stipulation that will

11   help you with respect to any and all of them or at least

12   narrow the universe.  Two, once you've tried to narrow the

13   universe, you get to the point where you realize something has

14   to be briefed, you negotiate a schedule and a method for

15   getting that in front of me and you fold it into the joint

16   submission that you're going to make to me.  And let's say

17   let's just have you make that no later than -- hang on one

18   second.  Let me look at the calendar.  We have Thanksgiving

19   next week.  How about by the 28th which will -- this is your

20   submission with your proposed joint schedule for the remaining

21   discovery and forgetting teed up to me any motion if you need

22   to make one formal or informal on this issue.  Okay?  Gets you

23   past Thanksgiving.  If you can do it before Thanksgiving with

24   a proposed schedule, so much the better.  Okay?

25            And then with respect to the managing agent

1    question, if I have to look at it for any individual for which

2    I have to try to answer the question, you know, give me what

3    you think I ought to have.  If it's not complicated and hasn't

4    yet been produced, see if you can work together to get it out

5    there and, you know, focus me on what you need to focus me on

6    and try not to reinvent the wheel on anything you've already

7    written to save your clients money.  Okay?

8              MR. KLEPPER:  This is Mr. Klepper.  I'm certainly

9    happy to --

10             THE COURT:  Oh, and substantial production of the

11   documents by December 7.  And you already seem to have worked

12   out agreement on these other deadlines which I'll approve if

13   you're all working hard towards it and you think you really

14   will get it done.  Okay?

15             MR. KLEPPER:  Judge, Mr. Klepper.  If I could just

16   sort of try to summarize everything.  There's a number of

17   other issues raised by both parties in the joint status

18   report.  I wonder if we shouldn't treat those in basically the

19   same fashion as you just directed us to treat the managing

20   agent question.  In other words, do our level best again to

21   try to resolve them, compromise, et cetera.  If we can't set a

22   deadline for the party who's trying to raise the issue, to

23   make a submission formal or informal.  I'll work with Mr.

24   Lupkin on that.  Get the issue teed up before Your Honor, you

25   know, the end of the month kind of a thing so that you can

1    make a ruling.  Because there are a number of other open

2    discovery issues [inaudible] --

3              THE COURT:  Right.  That's a good point.

4              MR. KLEPPER:  Yeah.  So I think the same process

5    should be applied to those other issues I guess is my

6    suggestion.

7              The only other caveat I would make, I would suggest

8    that we, you know, today or Monday submit the I think

9    essentially agreed upon schedule to get that done and then

10   work on everything else which will take a little more time in

11   consultation after client communication, et cetera, over the

12   next week or two so we at least have the schedules to Your

13   Honor.

14             THE COURT:  You can always put in a schedule.  If we

15   are unable to work this out, then these will be the dates on

16   which we will do something.  But I did ask you enough time to

17   confer and to just give me those things [indiscernible] you

18   couldn't agree on.  And so I'm just wondering to what extent

19   should we not be putting off any of the other issues?

20             MR. LUPKIN:  This is Jonathan Lupkin, Your Honor,

21   behalf of HotelsAB and Mr. Balazs.  I think we should be

22   looking at this as, you know, the way a construction

23   contractor looks at it in terms of the critical path.  It

24   seems to me that the critical path between us and getting an

25   approved schedule is dealing with this managing agent issue.

1  I think that that's plenty to deal with in the short term.

2  And you know, we have a couple of other issues which I'm

3  prepared to hold in abeyance until we resolve this threshold

4  issue.

5           THE COURT:  Okay.  I think you can put your heads

6  together and come up with a sensible schedule and plan and I

7  will look for that.  Okay?

8           MR. LUPKIN:  If for whatever reason -- would it be

9  too much to ask Your Honor to have a control day call in the

10 event that we're having a difficult time?

11          THE COURT:  When are you thinking?

12          MR. LUPKIN:  Well, if it's contemplated that our

13 submission of the schedule including the briefing on the

14 managing agent issue was going to be on the 28th might I

15 suggest that we have a control date of the 27th.

16          THE COURT:  Yes.  I mean look --

17          MR. LUPKIN:  [Inaudible] --

18          THE COURT:  -- if you could get something sooner,

19 that's even better.  The 27th is not good because I am on

20 trial.  I could do late in the day on the 26th though.

21          MR. LUPKIN:  That's fine with --

22          THE COURT:  I mean you're talking right after

23 Thanksgiving, but you're going to be talking between now and

24 then anyway.

25          MR. LUPKIN:  My hope and expectation, my sincere

38

1   hope is that all of this is resolved before Thanksgiving.  But

2   I do -- you know, I'm trying to be realistic here.

3              THE COURT:  Let's just do this.

4              MR. LUPKIN:  [Inaudible] problem.

5              THE COURT:  Let's just do this.  Let's not put it

6   down on my calendar.  If you still have a problem by Monday,

7   you know, if you're running into problems by Monday the 26th,

8   call on that day.  I don't have a heavy schedule that day.  I

9   should be able to talk to you at some point during that day.

10             MR. LUPKIN:  Very well, Your Honor.  Thank you.

11             THE COURT:  Okay?

12             MR. KLEPPER:  And Judge, one point of clarification.

13  To be clear, when you say if we're running into problems by

14  that date, a problem as to the process and schedule going

15  forward?

16             THE COURT:  Correct.

17             MR. KLEPPER:  Not that we resolved all issues.

18  Okay.

19             THE COURT:  Correct.

20             MR. KLEPPER:  That's fine.

21             THE COURT:  Unless you've already figured out that

22  you can't resolve anything at all and you can't, you know --

23             MR. KLEPPER:  Your Honor, we'll be happy to call,

24  we'll be thrilled to call you on the 26th if we have in fact

25  resolved everything.

39

1          THE COURT:  That would be good, that would be good.

2   All right?

3          MR. LUPKIN:  All right.

4          THE COURT:  All right.  I think, look, if you

5   address the depositions with fairness in mind, how important

6   are these witnesses to both sides, if they are as important as

7   one side is telling me they are, it's hard to believe the

8   other side would not want to have them as witnesses.  So if

9   that's the case and they're really not that important, then

10  maybe you're willing to stipulate you won't use them at

11  summary judgment or trial.  If they really are that important,

12  you got to figure out how to make them available.  Right?

13         MR. LUPKIN:  Yes.

14         THE COURT:  Okay.

15         MR. LUPKIN:  So the briefing now is just going to be

16  -- the schedule -- the [inaudible] that we're going to be

17  doing about teeing up issues, it's going to be on the managing

18  agent issue only, correct?

19         THE COURT:  It's going to be scheduling for

20  discovery.

21         MR. LUPKIN:  Yes.

22         THE COURT:  Scheduling for the substantial

23  production of documents.

24         MR. LUPKIN:  Yes.

25         THE COURT:  Overall discovery with the expert

40

1   reports and all that.  And a schedule if need be to put in

2   front of me of further documents or briefing or whatever you

3   feel the need to on the managing agent point.  And then

4   anything else that you feel the need to schedule, you can try

5   to schedule.

6           MR. LUPKIN:  Okay.

7           THE COURT:  Okay?

8           MR. LUPKIN:  Thank you very much, Your Honor.

9           THE COURT:  All right.  Go.  Go do.

10          MR. LUPKIN:  Goodbye.

11          MR. KLEPPER:  Thank you for your patience, Judge.

12          THE COURT:  You're welcome.

13          MR. KLEPPER:  Enjoy the holiday.

14          THE COURT:  You too.  Bye-bye.

15          MR. KLEPPER:  Bye-bye.

16          MR. LUPKIN:  Thank you, Your Honor.

17          MR. KLEPPER:  Thank you.

18                      * * * * * *

19

20

21

22

23

24

25

41

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                                    _Mary Greco_____

6                                         Mary Greco

7  Dated:   November 27, 2018